[No. 25007.   Department One.   July 25, 1934.]

*In the Matter of the Estate of* FRANK KILLIEN, *Deceased.*

EVERETT TRUST & SAVINGS BANK, *as Executor, Respondent,* v. WILLIAM H. PEMBERTON, *as Supervisor of the State Inheritance Tax and Escheat Division, Appellant.*[1]

[1]Reported in 35 P. (2d) 11.

336

*William H. Pemberton* and *John M. Boyle, Jr.,* for appellant.

*J. A. Coleman* and *Davis, Groff & Moran,* for respondent.

MILLARD, J.—This is an appeal by the supervisor of the inheritance tax and escheat division of the state

from an order entered by the superior court for Snohomish county adjudging the proceeds from two life insurance policies, paid to a trustee as beneficiary thereunder, to be exempt from inheritance tax.

Frank Killien obtained from the Northwestern Mutual Life Insurance Company two policies (one dated February 10, 1925, in the sum of twelve thousand dollars, and one dated September 26, 1932, in the sum of five thousand dollars) of insurance upon his life, each payable, in the event of his death, to his wife, Cora J. Killien. Each policy contained a provision reserving to the insured the right to change the beneficiary.

On November 12, 1932, the insured caused the two policies to be made payable to the Everett Trust & Savings Bank, of Everett, reserving the right to change the designation of the beneficiary then made. On the same date, the insured entered into a trust agreement with the Everett Trust & Savings Bank whereby, upon his death, the Everett Trust & Savings Bank, as trustee, agreed to collect the proceeds of the policies, to invest the same in the manner therein provided, to pay one-tenth of the proceeds of the insurance upon receipt thereof to the insured's son, Francis G. Killien, and one-tenth to Lenore Linden, daughter of the insured, and to hold the balance of the proceeds and the accumulations thereof in trust for the benefit of the insured's son, William A. Killien, to be paid to him upon his arrival at the age of twenty-five years, unless expended prior thereto for his maintenance, support and education. The insured reserved the right to change the beneficiary, to receive the dividends upon the policies or surrender the insurance for its cash value. All premiums accruing on each of the policies during the life of the insured were duly paid to the insurer.

338

The insured died November 29, 1932, leaving a will in which he nominated the Everett Trust & Savings Bank executor and devised and bequeathed all of his property, except that which was to be added to the trust estate created with the Everett Trust & Savings Bank for the benefit of William A. Killien, to his three children named above. The amount due upon the two insurance policies was duly paid to the Everett Trust & Savings Bank, as trustee under the above mentioned agreement. The executor (the Everett Trust & Savings Bank) filed a petition praying that the proceeds of the policies received by it as the beneficiary under the policies be adjudged exempt from inheritance tax. The prayer was granted, and this appeal followed, as recited above.

Counsel for appellant contend that the supreme court of the United States, in *Chase National Bank v. United States*, 278 U. S. 327, 49 S. Ct. 126, 63 A. L. R. 388, enunciated the following rules under which the proceeds of the policies in the case at bar are subject to inheritance tax:

"Rule 1. Proceeds of life insurance policies payable to estates are subject to inheritance taxes.

"Rule 2. Proceeds of life insurance policies, except those payable to estates, are subject to inheritance taxes where the insured pays the premiums and reserves in the policy the right to change the beneficiary.

"Rule 3. Proceeds of life insurance policies, except those payable to estates, are exempt from inheritance taxes, where the beneficiary pays the premiums and the insured has not reserved the right to change the beneficiary."

It is insisted that the case at bar falls within Rule 2, because the insured paid the premiums and reserved the right to change the beneficiary; that Rem. Rev. Stat., § 11201-1, changes Rule 2 only as to policies of

life insurance where the proceeds are paid to beneficiaries. Appellant argues:

"Here the proceeds of the policies were paid to the Everett Trust & Savings Bank, named the beneficiary in the policies, while as a matter of fact *it was not the beneficiary at all*. It was simply the Trustee and the beneficiaries were the heirs named in the Trust Agreement. True, it received the proceeds, but not for its own use; it could only pass them on to *the beneficiaries* as directed in the Trust Agreement. The proceeds of the policies were not *paid to beneficiaries;* the tax here to be imposed is not a tax on the transfer of the proceeds from the insurer to the Trustee; it is a tax on what the beneficiaries take by deed of trust and not by contract of insurance. Sec. 11201-1, Rem. Rev. Stat., does not apply, therefore *'Rule 2'* established in the *Chase National Bank* case applies and the proceeds are subject to inheritance tax."

There is no controversy as to Rule 1. Rule 2 can have no application in this state, for the reason that, under Rem. Rev. Stat., § 11201-1, it makes no difference who pays the premiums or whether a right to change the beneficiary is reserved in the policy.

Counsel for respondent contend that the general inheritance tax statute (Rem. Rev. Stat., § 11201) is not applicable to proceeds of life insurance policies unless paid to the estate of the insured, and that Rem. Rev. Stat., § 11201-1, exempting from inheritance tax the proceeds of life insurance policies paid to beneficiaries, is applicable.

The general inheritance tax statute, so far as is pertinent to the question before us, reads as follows:

"All property within the jurisdiction of this state, and any interest therein, whether belonging to the inhabitants of this state or not, and whether tangible or intangible, which shall pass by will or by the statutes of inheritances of this or any other state, or by deed, grant, sale or gift made in contemplation of the death of the grantor or donor, or by deed, grant or sale or

gift made or intended to take effect in possession or in enjoyment after the death of the grantor or donor to any person in trust or otherwise, shall, for the use of the state, be subject to a tax. . . .'' Rem. Rev. Stat., § 11201.

The foregoing statute provides for the imposition of an inheritance tax only on all property, or any interest therein, which passes (1) by will or by the statute of inheritance; or (2) by deed, grant, sale or gift (a) made in contemplation of the death of the grantor or donor, or (b) made or intended to take effect in possession or in enjoyment after the death of the grantor or donor.

''Statutes imposing inheritance or transfer taxes apply only to the transfer of property in which decedent, at the time of death, had some right, interest or estate . . .'' 61 C. J. 1669, § 2500.

''In accordance with the rule that only the transfer of property which decedent owned or had an interest in at the time of his death is taxable, the proceeds of life insurance policies payable to insured or his estate are taxable as belonging to decedent at the time of his death. Under this rule it has been held that a life insurance policy payable to the executors, administrators, and assigns of deceased is subject to the tax, but not a policy payable to executors, administrators, or assigns of insured for the express benefit of decedent's wife and children, or a policy to named beneficiaries, or 'to a trust estate where insured had no right to change the beneficiary. In some jurisdictions, however, taxation of proceeds of insurance payable on the death of any person is expressly provided by statute.'' 61 C. J. 1670, § 2501.

The right of the beneficiaries of life insurance policies to receive the proceeds thereof arises under the contract of insurance, and does not spring from the death of the testator. The date of death is the time fixed when the insurer becomes obligated to pay.

The first two clauses of the statute (Rem. Rev. Stat., § 11201) imposing the tax on property which shall pass by will or by the statute of inheritance, clearly manifest the purpose to tax only that which would, in the normal course of events, pass by will or by the statute of inheritance. The patent purpose of the last two provisions of the statute imposing a tax on the transfer of property by deed, grant, sale or gift (1) in contemplation of death, or (2) intended to take effect in possession or enjoyment after the death of the donor, is to prevent persons from evading the tax imposed by the first two provisions. Plainly, the taxation only of property which, if left to pursue its normal course, would pass under the inheritance statute or by will, is contemplated by the general inheritance tax statute (Rem. Rev. Stat., § 11201). We agree with the argument of counsel for respondent that

"Life insurance, unless the insured or his estate is the beneficiary, is not of that character. It does not pass by will or the statute of inheritances."

■ Another provision of the tax statute, reading as follows, expressly exempts from inheritance tax the proceeds of all life insurance policies, except those payable to the estate of the deceased insured:

". . . the proceeds of all life insurance policies, hereafter or heretofore paid to beneficiaries, except where the estate of the deceased insured, is the beneficiary, shall be exempt from inheritance tax. . . ." Rem. Rev. Stat., § 11201-1.

We hold, as stated in the annotation at page 525, 47 A. L. R., that,

". . . except where specifically mentioned (as in Wisconsin statute and Federal Revenue Act 1918), the proceeds of a life insurance policy payable to a designated beneficiary are not subject to a succession tax."

Our statute (Rem. Rev. Stat., § 11201) seems to be modeled upon the statutes of New York and Massachusetts.

In *In re Fay's Estate*, 25 Misc. Rep. 468, 55 N. Y. Supp. 749, the court said:

"The distinction between two classes of policies—those payable to the insured or his personal representatives, and those payable to a specific beneficiary—is clearly recognized by the decisions. In the first class the contract is made for the benefit of the insured, and the proceeds pass to his personal representatives as part of his estate, and are liable for the payment of his debts and legacies; while in the latter case the contract is made for the benefit of others, and the proceeds are transferred to them by the terms of the contract, and not by virtue of the statute of distributions or the provisions of the will of the insured."

In *In re Parson's Estate*, 102 N. Y. Supp. 168, the insured had two policies of insurance payable to his estate. Each policy contained a provision reserving to the insured the right to change the beneficiary. Attached to each policy was an instrument of assignment transferring the policy to his wife. The comptroller contended that the proceeds of the policies were subject to a tax because the transfer was, first, by death, and, second, by an assignment made to take effect in possession or enjoyment after death. The court held that the assignment was equivalent to a change of beneficiary, and that the proceeds were not subject to the tax. The court said:

"A policy of insurance differs from other contracts, as it is not ordinarily intended to bring a benefit to the insured himself, but to others after his death. If this were a conflict between parties having mutual claims upon the insured, or having conflicting interests by assignment or otherwise, the question might require more serious consideration; but as against the state seeking to collect a tax from the beneficiary, and thus

deprive her of a part of the insurance money, I think the deceased was not possessed of the policies at the time of his death, and that the widow did not obtain title to them through his will or by laws of the state. The statutes of this state favor and encourage insurance for the benefit of a wife, and the state is at a disadvantage when it seeks to tax such a provision for her when the company and all others recognize her right to the benefit intended. This is not a case of an assignment 'intended to take effect in possession or enjoyment at or after such death,' as mentioned in the statute. It was an absolute present assignment of the interest of the assignor in the policy. But the policy was payable at his death, and therefore the assignment provided that it was payable to her if she survived him. The assignment of a policy of insurance payable only after the death of the insured differs from the assignment of a chose in action, which is payable at some particular time. It is quite usual in insurance policies that the beneficiary is named as such if she survives the insured. But that does not make it, within the meaning of the tax law above cited, a provision to take effect after the death of the assured. She obtains an immediate title and right to enjoy the moneys when they become payable as death losses. Her title might be defeated by her death during his lifetime."

In *In re Elting's Estate,* 140 N. Y. Supp. 238, where the insured held a policy of insurance on his life, payable to his executors, administrators, or assigns, but "for the express benefit of his wife, Carrie D. Elting, and surviving children," *it was held the personal representative was merely a trustee, the real beneficiary being his wife and surviving children,* and that the proceeds of the policy were not subject to an inheritance tax. The court said:

"The policy simply designates the executors, administrators, or assigns as some one to whom the payment can be made; but it is clearly not for them to say what shall be done with it, but they are the medium only to pass the money to the widow and children, who are

alone entitled to its proceeds. . . . This policy, to my mind, is merely a contract between the decedent and the company for the benefit of his wife and children, and no one else is or can be interested therein, and the same does not pass by reason of the provisions of this will, but by reason of the clause in the policy itself.''

In *In re Voorhees' Estate*, 193 N. Y. Supp. 168, 200 App. Div. 259, where the insured's policies were payable to his estate and he assigned them to a trustee, reserving the right to revoke the trust, it was held the assignment was not made in contemplation of death, within the meaning of the statute, and was not, therefore, subject to a transfer tax; that, if a policy of insurance is payable to the insured's estate, and is not assigned by him, so that at his death it becomes an asset of his estate, the proceeds of the policy are subject to a succession tax. The court said:

''Generally a life insurance policy is not property acquired for the benefit of the owner; it is not an investment, or part of his estate; it returns to him no income; nor generally is it an instrument for his present or future use, but rather a contract to secure payment of a sum after his death to another, the beneficiary named therein.

''The intent of the assured with respect to these policies seems plain; he acquired the several policies and assigned them to provide a trust fund for the benefit of his wife, his son, and others after his death; and by the trust deeds he directed how, under what conditions, when, and to whom payments therefrom should be made after his death. By his plan he was not distributing after death property valuable to him or his estate. Unless he made the contracts with the insurance companies and paid the premiums, there would be no sums coming in therefrom, and, having made the contracts, except in the event of a default in payment of the premiums, the contracts of insurance would be of little value to him or his estate. If he failed to pay the premiums on the ten-year renewable term policies,

they would lapse, and on the four straight life policies there is but a small paid-up value. He has, indeed, by his trust deeds, directed how the proceeds of these policies shall be distributed after death, and named the conditions under which the beneficiaries should take. But this is the effect in principle of every life policy payable at death to another than the assured or his estate.

"Considering the nature of the property, we do not consider that the plan of the assured should be held to be of a testamentary character. The reserved right of revocation, standing alone, is in substance the right to name a new beneficiary, which is the right which exists generally under life insurance policies. The reservation does not indicate a present intent to change his purpose or plan with reference to the policies and their proceeds. There might be many reasons why he would desire to change his trustee, or to change some of the provisions of the trust deeds. The reservation does not at all indicate that he intended to recover possession of the policies to his own use. That he has availed himself of the assignments and a trust deed to dispose of these proceeds no more indicates an intent to defeat the Transfer Tax Law than does the procuring of a life policy payable to another than himself or his estate. There is nothing to indicate that the grantor made the reservation, or that he intended to use it, for any other purpose than to protect his beneficiaries. . . .

"By reserving to himself the dividends, so called, from the policies, he did not reserve the use of the property transferred to himself. It was specifically provided, as is usual in respect to life insurance, that he should pay the premiums, and the dividends, so called, are simply a return to him of so much of the premium paid by him as was an overcharge (above the actual cost) made upon the estimated cost of carrying the insurance for him during the period for which premium was paid. The dividends, so called, are not dividends in the usual meaning of that word. They are not a return upon an investment or on property.

"The right to substitute any other policies in place of either of those assigned was simply a provision of

prudent foresight (in harmony with a right he had under the terms of the policies), and does not indicate that the insured intended to retain the property in his control or change his original purpose.

"We conclude, therefore, that the assured assigned and delivered these policies before death; that the transfers of the policies and their proceeds were not made in contemplation of death, nor made to take effect in possession or enjoyment upon death only, within the meaning of the statute; that the proceeds of the policies under the assignments thereof came rightfully into the hands of the Provident Life & Trust Company of Philadelphia; that they never became the property of the estate of the deceased; and that there has not been and cannot be a transfer of the proceeds of the policies under the will of the deceased or the intestate laws of the state."

In *In re Haedrich's Estate*, 236 N. Y. Supp. 395, the insured took out a number of policies of insurance upon his life, some of which were payable to his wife, some to his daughter, some to his executor, and some to the firm of Haedrich & Son. Each of these policies contained a provision reserving to the insured the power to change his beneficiary. The insured executed a trust agreement with a trust company providing that the latter should have itself designated as beneficiary under the policies, and that all the proceeds which it might receive on the death of the insured should be held upon certain trusts, principally for the benefit of wife and daughters, with remainders over. The right to revoke or alter the trust agreement was reserved to the insured. The policies were later made payable to the trustee, as such, by notice of change of beneficiary. The state tax commission contended that the proceeds of the policies were subject to tax. The only question for consideration, the court stated, was

". . . whether or not the status of nontaxability of the proceeds of the policies is altered by reason of the fact that such designated payee takes in the capacity of a trustee for the wife and children of the insured, and not in its own right."

The court considered *Fagan v. Bugbee,* 105 N. J. L. 85, 143 Atl. 807, cited by appellant in the case at bar, and expressly refused to follow it. Stating the contention "that the trust agreement was made in contemplation of death is ably and amply disposed of" by *In re Voorhees' Estate,* 193 N. Y. Supp. 168, and denying the contention that the trust agreement was testamentary in character, the court held that the proceeds of the policies were not subject to the tax. The court said:

"The entire subject of insurance is sui generis, and occupies a somewhat anomalous position in the law. In ultimate essence, a contract of insurance is a gambling transaction, by which the insured, in so-called straight life insurance, wagers the substantially free use of the annual payments or installments of a certain principal sum against such total sum, payable to a designated third party, that he will die before he has paid enough of such installments to equal the principal sum. Such contracts have, from the time of the Statute of 14 George III, chapter 8, been upheld on grounds of public policy, since in the vast majority of cases they are made for the benefit of dependents of the assured, and thus tend to forestall the possibility of such dependents becoming public charges, as might otherwise be the case. It may therefore be said that such transactions are, in a very real sense, charged with a public interest, which has, no doubt, been an extremely potent underlying influence in inducing courts and Legislatures to continue the favored position which life insurance policies for specified beneficiaries have continuously occupied.

"The limit of the reason for such popular approval has coincided with the limitation of their exemption from taxation, and consequently, where the insured

has made the policy payable to his executors and administrators, without qualification, thus in effect dedicating the proceeds primarily to the payment of his creditors, they have been held subject to transfer tax, as we have seen. It is believed, however, that the fundamental reason for taxability in such cases is the fact that the proceeds of the transaction are beyond the protecting shield of public policy, and not, as stated in certain cases, because they pass under the will or the intestate laws of the state, since the latter is not the case in any true sense. The right to receive the money on the insurance in any such case does not pass by will or intestate laws. The right accrues to individuals who answer a certain description specified in the contract, but it is not a right which the decedent ever possessed, and it is fundamental that non dat qui non habet. The correctness of this view seems amply supported by the result in the *Van Dermoor* case, [Matter of Van Dermoor's Estate, 42 Hun (N. Y.) 326], *supra,* in which proceeds of a policy were held not taxable, where they were made payable 'to the said assured, his executors, administrators or assigns . . . *for the benefit of his widow,* if any.'

"On this theory it must follow that, in any case, the primary test of taxability of proceeds will be whether they are dedicated to the use of individuals toward whom the insured owed some especial duty, and if this requirement be satisfied the courts will, so far as possible, give effect to the dictates of this fundamental public policy, and will not seek to draw nice distinctions as to the extent of the assured's moral or legal obligations to those ultimately benefited, nor as to the conduit through which such benefit is to pass.

"The foregoing is not intended to convey the impression that it is beyond the power of the Legislature to effect a change in the law, so as to make taxable the proceeds of insurance policies payable to specified beneficiaries. It is, however, the opinion of this court that, in view of the long-established public policy connected with such matters, no presumption exists that the Legislature intends to disturb this well-settled law and policy, and any change in enactment must be

quite clear and explicit, to be construed as effecting such a result. . . .

"In the case of life insurance the theory upon which any such tax must be based utterly fails. The insured possesses no right which he can ever enforce. Nothing will ever pass to him or any one else by reason of the privilege conditionally granted by the state to dispose of property by testamentary act, for the simple reason that he never has any property right to pass. The claim to the insurance money accrues to the named designee, not by reason of any special privilege granted by the state, but in consequence of the happening of an independent event, namely, the death of the insured, and the fact that in the ordinary course of mundane affairs that event is bound to happen in no way alters the nature of the transaction.

"If the act of a man in insuring his life for the benefit of his dependents is consonant with the dictates of public policy, it is most obvious that any arrangement which tends to add to the value of his act should be entitled to even greater public favor. Possibly the greatest defect of the old-time life insurance was found to be the fact that, when considerable lump sums came into the hands of dependents, their business inexperience frequently resulted in the early dissipation of the proceeds of the foresight and self-sacrifices of the assured. The first step toward remedy of this evil was the practice, which still largely prevails, of permitting the insured to specify that the principal sum should be paid in designated installments. More recently many have felt that they could obtain a larger return and greater flexibility in caring for a number of dependents by depositing the policies under an insurance trust, as in the instant case.

"It is the contention of the appellant that, were the policies payable either in a lump sum or in installments to the beneficiaries, they would not be taxable, but that the additional, possibly more beneficial, step makes them subject to the tax. With this contention this court cannot agree. Under such a trust arrangement the trust beneficiaries are as truly the equitable owners of the proceeds as if they had been named as beneficiaries therein. The trustee has a mere legal

title, and in equity the substance rather than the form of the transaction is of transcendent importance. . . .

"The opinion of the New Jersey Supreme Court in the case of *Fagan v. Bugbee, supra,* has been carefully considered. As quoted in that opinion, the New Jersey statute construed is materially different from the present section 220 of the New York Tax Law, but corresponds almost word for word with that section as it existed at the time of the decision of Matter of Voorhees, supra. This case, therefore, presents no authority contrary to the views herein expressed, for the reasons, first, that the New Jersey statute materially differs from the applicable statute of this state; and, second, that if the New York statute were the same as the New Jersey statute therein construed, Matter of Voorhees' Estate is a direct, four-square authority, binding upon this court, that the result reached in the Fagan case is not the law of this state."

Under the Massachusetts statute, which is substantially the same as ours, imposing a tax on

". . . property . . . which shall pass . . . . by deed, grant, or gift . . . made or intended to take effect in possession or enjoyment after the death of the grantor,"

it was held, in *Tyler v. Treasurer,* 226 Mass. 306, 115 N. E. 300, L. R. A. 1917D, 633, that sums of money paid to specified beneficiaries by insurance companies who insured decedent's life were not subject to the succession tax, as money so paid does not pass by will or by the laws regarding inheritance succession. The court said:

"A policy of life insurance is a contract. It is commonly a tripartite agreement, to which the parties are the insured, the insurer and the beneficiary. A policy of life insurance is a contract for a consideration paid, usually in money, in one sum or at different times during the continuance of the risk, which involves the payment of money or other thing of value by the insurer to the family, kindred, representative, or other

designated beneficiary of the holder of the policy, conditioned upon the continuance or cessation of human life, or which involves a guaranty, assurance or pledge of an endowment or an annuity. *Commonwealth v. Wetherbee,* 105 Mass. 149, 160. See St. 1907, c. 576, § 66; *Curtis v. New York Life Ins. Co.,* 217 Mass. 47. The rules applicable to the interpretation and enforcement of policies of life insurance are those which govern contracts. *Davis v. New York Life Ins. Co.,* 212 Mass. 310. While, speaking with technical accuracy, a beneficiary is not a party to a policy of life insurance and could not at common law maintain an action in his own behalf, yet he has an equitable interest in the policy and can maintain an action for his own benefit in the name of the personal representatives of the insured, and by statute is enabled to bring an action in his own name. *Campbell v. New England Mutual Life Ins. Co.,* 98 Mass. 381, 400. St. 1907, c. 576, § 73. The rights of the beneficiary are thus protected by the law and by the statute. The rights of the beneficiary attach at once upon becoming so designated by the terms of the contract. *Pingrey v. National Life Ins. Co.,* 144 Mass. 374. Where the beneficiary is the wife of the insured, her rights instantly vest upon a meritorious consideration. *Bailey v. Wood,* 202 Mass. 562. It has been said that, apart from any statutory provision, the designation of a beneficiary in a policy of life insurance is in the nature of an executory trust for his benefit of which he cannot be deprived without his consent. *Boyden v. Massachusetts Mutual Life Ins. Co.,* 153 Mass. 544, 546. Said Chief Justice Fuller in *Central Bank of Washington v. Hume,* 128 U. S. 195, at page 206: 'It is indeed the general rule that a policy, and the money to become due under it, belong, the moment it is issued, to the person or persons named in it as the beneficiary or beneficiaries . . . *Gould v. Emerson,* 99 Mass. 154. *Knickerbocker Life Ins. Co. v. Weitz,* 99 Mass. 157.' The rights of the beneficiary are vested when the designation is made in accordance with the terms of the contract of insurance. They take complete effect as of that time. They do not wait for their efficacy upon the happening of a future event. They

are in no wise modified or increased at the time of the death of the insured.

"The contract of life insurance differs from most other contracts, in that it is not intended ordinarily for the benefit of the insured, but of some dependent. Its original and fundamental conception is a provision by small, periodical contributions to secure a benefit for the family. While this conception has been enlarged in some respects, and especially in its commercial aspects, still the basic elements continue and are found in all the cases at bar. The insured retains no ownership of that which has passed to the beneficiary under the contract. A reserved right to change the beneficiary does not affect the essential nature of the rights of the beneficiary so long as they last. Whatever the insured does in way of designation of a beneficiary takes effect forthwith. If his act rightly be describable as a gift, it is a present gift which, so far as concerns him, takes effect at once both in possession and enjoyment by the beneficiary. *Attorney General v. Clark,* 222 Mass. 291. There is no fund in which he has an ownership which is the subject of his act in designating the beneficiary, as in *New England Trust Co. v. Abbott,* 205 Mass. 279, and *State Street Trust Co. v. Treasurer & Receiver General,* 209 Mass. 373. The insured has no title to the amount due on the policy. He does not and cannot make a gift of that. The right to that amount as an instant obligation does not spring into existence until after his death. Even then the money belongs to the insurer, who is charged with the duty by the contract to pay to the beneficiary. So far as the insured is a 'grantor,' to use the word of the statute, the only thing which he grants or can grant is an interest in a contract. So far as he can make a 'gift,' the only thing which he has to give is a right in a contract. By designating a beneficiary both the 'grant' and the 'gift,' so far as either exist at all, take effect in enjoyment and possession at once. Such a relation does not by fair intendment come within the descriptive words of the statute as 'property . . . which shall pass . . . by . . . gift . . . made or intended to take effect in possession or enjoyment

after the death of the grantor.'

"Tax laws are not to be stretched beyond their reasonable meaning, but rather in cases of doubt are to be construed with some strictness. *Martin L. Hall Co. v. Commonwealth,* 215 Mass. 326. If an alleged right to tax does not fall within the words of the governing statute, it does not exist. *City National Bank v. Charles Baker Co.,* 180 Mass. 40, 41."

In *State Board of Tax Commissioners v. Holliday,* 150 Ind. 216, 49 N. E. 14, 42 L. R. A. 826, under a statute in general terms not specifically including life insurance, it was held that money paid to beneficiaries was not subject to an inheritance tax.

The argument of counsel for respondent that the intent of the inheritance-tax statute is to impose an exaction upon property which by the consent of the state passes from the dead to the living is sustained by our statement, as follows, in *In re Sherwood's Estate,* 122 Wash. 648, 211 Pac. 734:

"It is well to call to mind the principle upon which taxes upon and exactions from the estate of a deceased person rests. The right of the owner of property to direct what disposition shall be made of it after his death is not a natural right which follows from mere ownership. On the contrary, the right has its sanction in the laws of the state having jurisdiction over the person of the donor or jurisdiction over the property. The state may, if it so chooses, take to itself the whole of such property, or it may take any part thereof less than the whole and direct the disposition of the remainder; and this without regard to the wishes or direction of the person who died possessed of it, and without regard to the claims of those to whom he has directed that it be given."

That is to say, the inheritance tax is an exaction by the state for permitting to be done that which can be done only with the state's permission. It can have no application to that for which the state's permission

is not required. Therefore, as life insurance is a contract made by one person for the benefit of another, in which contract the death of the insured is not a factor except as fixing the time for performance by the insurance company, and as the right to make the contract and the right to fix the time for performance do not depend upon permission from the state, the contract of insurance, where the proceeds thereof are payable to a designated beneficiary, is not subject to the inheritance tax.

The reservation of the right to change the beneficiary of a policy of insurance does not render the proceeds of the policy subject to an inheritance tax. *In re Parsons' Estate*, 102 N. Y. Supp. 168; *In re Voorhees' Estate*, 193 N. Y. Supp. 168; and *In re Haedrich's Estate*, 236 N. Y. Supp. 396. The reservation of the right of revocation in a deed of trust does not render the beneficiaries of the trust liable to an inheritance tax under a statute imposing such taxes where the deed, grant, or gift is to take effect in possession or enjoyment after death. *In re Dolan's Estate*, 279 Pa. 582, 124 Atl. 176, 49 A. L. R. 858. A trust established by a man for the benefit of his children and their appointees does not become taxable as in contemplation of death merely because a power of revocation is reserved in it. *People v. Northern Trust Co.*, 289 Ill. 475, 124 N. E. 662, 7 A. L. R. 709. The fact that the beneficiary named in the policy holds as trustee does not, as we stated above, render the proceeds of the policy subject to inheritance tax. *In re Elting's Estate*, 140 N. Y. Supp. 238; *In re Voorhees' Estate*, 193 N. Y. Supp. 168; *In re Haedrich's Estate*, 236 N. Y. Supp. 395.

The only authority supporting the position of the appellant is *Fagan v. Bugbee*, 105 N. J. L. 85, 143 Atl. 807. In that case, under facts like those in the case

at bar, the court concluded, without presenting any argument in support of its conclusion other than that

"The beneficiaries in the present case take by deed of trust and not by contract of insurance. It is the nature of the vehicle, which conveys the right of the property and not the nature of the property itself, which determines the taxability of the transfer. . . ."

that the proceeds of the policies were subject to a transfer or succession tax.

That case stands solitary and alone. The conclusion in *Fagan v. Bugbee, supra,* has been expressly repudiated by the New York courts. *In re Haedrich's Estate,* 236 N. Y. Supp. 395. Neither are we inclined to follow the holding in that case, for the reasons above stated.

■ It is the public policy of this state, as declared by Rem. Rev. Stat., § 11201-1, to exempt insurance from the burden of the inheritance tax, in order to encourage the development of insurance for the protection of dependents. The purpose of the trust agreement is not contrary to that public policy. It is in direct furtherance thereof, and its design is to protect those for whom insurance protection is intended. As soundly argued by counsel for respondent,

"There is no possible public purpose expressed in section 11201-1 that would not extend to a case where that protection is to be made effective through a trustee."

The decision is contrary to the declared public policy (Rem. Rev. Stat., §11201-1) of this state to exempt life insurance policies from taxation "except where the estate of the deceased insured is the beneficiary."

The opinion in *Fagan v. Bugbee,* 105 N. J. L. 85, 143 Atl. 807, was filed December 6, 1928. It is no

longer an authority, in view of the fact that the legislature of New Jersey, by an act (Ch. 144, § 1, Subd. B and C of the Laws of 1929, p. 250) approved April 22, 1929, entered the following exemptions to the statute imposing the tax:

"(b) Property passing to a beneficiary or beneficiaries having any present or future, vested, contingent or defeasible interest under any trust deed or agreement heretofore or hereafter executed by a resident or nonresident decedent, to the extent that the trust fund results from the proceeds of contracts of insurance heretofore or hereafter in force, insuring the life of such decedent and paid or payable, at or after the death of such decedent, to the trustee or trustees under such trust deed or agreement;

"(c) Property passing to a trustee or trustees of any trust deed or agreement heretofore or hereafter executed, by virtue of any contract of insurance heretofore or hereafter in force insuring the life of a resident or nonresident decedent and the proceeds of which are paid or payable at or after the death of such decedent to such trustee or trustees for the benefit of a beneficiary or beneficiaries having any present or future, vested, contingent or defeasible interest under such trust deed or agreement."

It is significant that chapter 135, Laws of 1929, p. 352, which is now Rem. Rev. Stat., § 11201-1, was enacted by our legislature directly following the decision in the *Fagan v. Bugbee* case. Like the statute of New Jersey, adopted in April of the same year, our statute was doubtless designed to foreclose any claims that might be raised under the *Fagan v. Bugbee* decision.

In Vol. 1, p. 41, § 120 (1), "Inheritance Tax and Transfer Service," published by Prentice-Hall, Inc., appears the following statement under the heading "Life Insurance Trusts":

"The tendency seems to be for the states to enact legislation which exempts life insurance proceeds

from taxation if payable to a beneficiary other than the estate, whether payable directly or to or through a trustee. Within the past few years the following states have enacted such statutes: California, Colorado, Delaware, Indiana, New Jersey, Ohio, Oregon, Pennsylvania, Washington and Wyoming.''

That is indicative of a general recognition by the states of the principle declared in *In re Haedrich's Estate*, 236 N. Y. Supp. 395, to the effect that the same principle of public policy which leads the states to favor insurance of one's life for the benefit of his dependents, leads also to favor all such further steps as may be necessary or expedient to prevent dissipation of the proceeds by the improvidence and business inexperience of the beneficiaries; and that the same public policy which dictated the exemption of the proceeds of life insurance paid to a beneficiary, requires the extension of that exemption to trusts which are created for the sole purpose of preventing the person to be benefited from nullifying the effect of provisions intended to further that public policy.

The case at bar is controlled, in favor of the respondent, by the provisions of Rem. Rev. Stat., § 11201-1. That statute recognizes an "estate" as a beneficiary and unambiguously expressly exempts all payments to beneficiaries "except where the estate of the deceased insured is the beneficiary." The evident intent of the legislature was to recognize as the beneficiary the person or corporation to whom, under the terms of the policy, the proceeds were payable, regardless of their ultimate destination. "Beneficiary," as that word is used in the insurance statute, means the person or corporation to whom, according to the terms of the policy, the proceeds are payable on the death of the insured. The term "beneficiary" has no other meaning, so far as the question here involved,

than the word "payee" applied to other kinds of contracts.

*Chase National Bank v. United States,* 278 U. S. 327, 49 S. Ct. 126, 63 A. L. R. 388, cited by appellant, is not in point. In that case, there was presented a question of limitation upon legislative power, while in the case at bar the question is the construction of a statute. The facts in the case cited are as follows:

Herbert W. Brown obtained three insurance policies on his life, aggregating two hundred thousand dollars, each naming his wife as beneficiary. Each policy reserved to the insured the right to change the beneficiary. All premiums on the policies were paid by the insured. He died testate. The tax, as assessed by the commissioner, included $9,146.76 imposed by reason of the inclusion in the estate of the proceeds of the three insurance policies, less forty thousand dollars exemption authorized by the statute. The executors paid the tax and, upon denial of a claim for refund, brought suit in the court of claims to recover the tax as illegally assessed. By § 401 of the Federal Revenue Act of 1921, a tax was imposed upon the transfer of every decedent. Section 402 of the act provided that the value of the gross estate of the decedent shall be determined by including

". . . the amount receivable by the executor as insurance under policies taken out by the decedent upon his own life and . . . the excess over $40,000 of the amount receivable by all other beneficiaries as insurance under policies taken out by the decedent upon his own life." 42 U. S. Stat. 278.

The court of claims certified two questions, asking for instructions thereon in aid of the determination of the questions in the court below. The questions were:

(1) Whether the tax imposed by § 402 on life in-

surance policies payable in terms to beneficiaries, other than the decedent or his estate, is a direct tax on property and void because not apportioned.

(2) Whether the $9,146.76 tax imposed bears such an unreasonable relation to the subject matter of the tax as to render it void.

Those two questions were the only questions before, and decided by, the court.

■ Answering the first question in the negative, the supreme court held that the exaction was not a direct tax. Such determination has no bearing upon the construction of our statute. The supreme court answered the second question in the negative, holding the method of computing the tax did not violate the fifth amendment of the Federal constitution. We cannot see that that determination affords any precedent applicable to a construction of our statute.

In *Chase National Bank v. United States, supra,* the court said:

"In the present case there is no question of the construction of the statute. The tax is plainly imposed by the explicit language of §§ 401 and 402 (f) if those sections are constitutionally applied."

We have no statute explicitly imposing a tax upon the proceeds of life insurance policies. The Federal Revenue Act of 1921 imposes a tax on the proceeds of policies of life insurance paid to beneficiaries. Under our statute (Rem. Rev. Stat., § 11201-1), the proceeds of policies of life insurance paid to beneficiaries, except where the estate of the deceased insured is the beneficiary, are not taxed. The right to collect the tax rests upon a distinction and difference between the Federal Revenue Act and our inheritance-tax statute. "This distinction," as argued by counsel for respondent,

". . . is found in the fact that under the provisions of the Revenue Act of 1921, a tax is directly imposed upon all proceeds of insurance in excess of forty thousand dollars payable to any beneficiary, while in the inheritance tax statutes of Washington no tax is imposed, except upon that which was property of the decedent and upon his death would have passed under his will or the statute of inheritance, were its so passing not prevented by transfers in his lifetime in contemplation of death or to take effect in possession and enjoyment after death."

The judgment is affirmed.

BEALS, C. J., MITCHELL, STEINERT, and MAIN, JJ., concur.